The second case of the day is Team Contractors v. Waypoint, 19-30704. I guess Mr. Shields is first? Yes, sir. May I proceed, Your Honor? Please. Thank you. Lloyd Shields for Waypoint NOLA, L.L.C. May it please the Court. Waypoint asked four things of this Court. Number one, to reverse the trial court order for a new trial, and that was based on an allegedly irreconcilably inconsistent jury verdict form. The form was not inconsistent. Second, to reinstate the judgment from the first trial. Third, if it's necessary, to reverse the second trial judgment. And fourth, the substantially prevailing attorney's fees issue. Waypoint asked this Court to reverse that and grant attorney's fees to Waypoint rather than to Team. In this case involving two full jury trials, Waypoint has submitted a number of issues to the Court, and we think they all merit the Court's consideration. But I'd like to start first with an issue that Waypoint believes is the decisive issue, and that is the jury verdict form. The jury verdict form was decided, agreed, after much discussion in the record, between the Court, both in the record and off the record, in chambers, between the Court and all the parties. And it was decided that under this unique situation, this particular jury verdict form would work. But first, just brief facts because they bear on, of course, the entire thing. This involved the retrofit of a high-rise building on Ploydra Street, just on the other side of Loyola, from an office building to at least partially a hotel. The owner was Waypoint. The contractor was Team. Midway in construction, it was discovered that there was a serious design problem involving the mechanical system. CCDs, construction change directives, change orders were issued, and Team did the work. And Team was paid 100% for that work, for everything it substantiated, paid by Waypoint. Nonetheless, Team filed suit. Team filed suit for several things. Mr. Shields, you're making a point there of your client's responsiveness. When was that final million-dollar payment made, before or after this lawsuit was filed? It was made after the lawsuit was filed, but before trial. And it was made because the lender finally agreed, and I'll talk specifically about the lender in a moment. The lender finally agreed that it would ease up on those requirements. Team specifically understood, and this was the testimony. Excuse me, I'm looking at the camera. I don't care what you ought to be looking at. Actually, our assistant put a photograph of Judge Scalia right above the camera so I could look at him. The team testified that it knew this, and its contractual requirements of this. I'm going to give you the ROA numbers and everything. The lender had to approve all of the pay applications and all of the lien and claim releases, very importantly. And Waypoint had to approve them also. Those never came. I don't see the delay in the million-dollar payment as being significant to the issues before. It's just you made the point that all of this had been, all of Team's proper invoices, whatever, had been paid. So, I mean, if you think this is relevant to what we have to side-find, but I'm not concerned other than I just want to get clear, clarified. So, proceed any way you want to. Thank you, Your Honor. Team filed suit against the designers on the one hand and Waypoint, the owner, on the other. The suit against the designers was in tort only negligence. The suit against Waypoint originally was in both tort and contract. The suit was for $1,300,000 in what was called a design-related claim. Although, originally, Team sought over $3 million in lost profits. That went all the way into the lawsuit after the lawsuit started, but that part was ultimately dismissed. But the point is, the same damages were sought against the designers, tort theory, and against Waypoint, tort, and contract. Ultimately, Team dropped its tort claim against Waypoint so that we had even a more clear distinction between the tort suit against the designers and the contract suit against Waypoint. And that is what led to a problem which needed a solution, which this judge did find a solution to. The design-related claim was for all the same damages. One other thing. There was a separate contract-only claim against Waypoint, which was also fully tried in this first verdict. In the verdict form, it's question number 10. It has to do with unapproved change orders and contractual interest. That separate contract claim for $65,000 for the unapproved change orders and then another $38,000 for the interest total, $103,000 independently against Waypoint. So we're left with the designers' tort claim, Waypoint, contract claim. This was the situation. The court recognized immediately this led to the possibility of a double recovery. And the court had to address that. And the court did address that. After much discussion, which is contained in ROA 13-672-77, the court reached what it called a compromise and used – it was going to use the Louisiana Comparative Fault Chart to handle the situation and even explain how it would be used. This is what the court said, the words of the court. But I think we talked about this, how difficult that it is to apply. And that's why this compromise was reached as far as the way the jury verdict form is working. And because it was just – I didn't hear any other suggestions about how to do it. Then one of the other lawyers said, well, if they're found in breach of contract, the solution is they're 100 percent liable. Then the court said, well, this was talked about on Sunday, agreed. The plaintiffs – that's team – agreed to this jury verdict form based on that concept. And there's – I don't hear – you've got a suggestion about how we would do this? Nobody had one on Sunday, and I haven't heard one since then. So this seems to be a practical solution. That's an ROA 13-676-77. Then the court went on to explain exactly how it would work. I'm sorry, Mr. Shields. This is all relevant to you saying they've waived their Rule 49 argument, or this is moving towards you saying there was no inconsistency? There was no inconsistency is where we're going with this, Your Honor. And indeed, the court recognized the problem, came with a solution, and what I'm about to read is exactly what the court said was the solution. Yes, and I think we all have read what you're about to read because it's in your brief. Yes. My preliminary question is, this is, if I'm not mistaken, the transcript from the June 2018 hearing. And everyone is referring to what she says are her notes, but we don't have this. This is not contemporaneous because there's no transcript. Apparently, all of this occurred off the record. Is that correct? No, sir. What I'm about to – ROA 13-673 is exactly the judge stating what would happen if the percentages came in exactly as they did. Okay, and this is a transcript from that earlier pre-form construction. This is not a June 2018, oh, well, now we'll all remember what we did. Your Honor, I don't remember the date, but I do have the page number. Yeah, I think – I guess what I'm asking, and it's important to me, is that is that page number from a June 2018 hearing where everyone's saying, well, this is what we all did, but it's off the record. No, sir, this was definitely on the record in the courtroom. Okay, then we can continue. Then it's my mistake. Go ahead. Your Honor, it's day nine of the transcript, whatever date that is. Well, that's very helpful. Thank you. The judge said, if this jury finds that there is negligence, but no breach of contract, and they assign a percentage of fault to Waypoint, which is exactly what happened, Waypoint will not be liable for that percentage of the recovery, but that percentage will reduce the amount that the other parties are responsible for. If, instead, the jury finds there's negligence and breach of contract and assigns a percentage of fault to Waypoint, Waypoint will be responsible for that percentage of the damages in Section 8. So what we have in this situation – and that's, again, ROA 13673 – what we have in this situation is not something that happens in many other cases involving inconsistent verdicts where something unforeseen happens. What was contemplated exactly by the judge in open court, which I just read, is exactly what happened. Well, counsel, let me stop you there. I read Judge Morgan's opinion. I read that portion, and the two never link up. When Judge Morgan granted a new trial based on a motion for a different purpose, I forget, she didn't talk about that. She didn't have the inconsistency in the assigning fault to Waypoint under the negligence comparative fault chart, but not finding any liability for breach of contract. Was that not raised? Was there not a hearing? Is that where she went astray, that she forgot how this was supposed to work? Just help me with that. Judge, she may have forgotten, but if you'll go back and read our briefs at the time, we were black words on white paper screaming, but this is what happened, and this is what the court said would be the result if this happened. Yes, sir. You told us earlier that on questions 10 and 11 of the verdict form from the first trial – I think it's 10 and 11. 6 and 10. That was for total damages just against Waypoint of $103,000. Is that correct? No, sir. That's in the second trial that Waypoint was subject to judgment. I'm not subject to judgment. I'm talking about in the jury verdict form from the first trial, questions 10 and 11, and I'm probably going astray here. They were certainly seeking contract damages from Waypoint, correct? Yes, sir. They were seeking those damages. And there was a place to show that. Yes, sir. And you said that was a total of $100,000, a separate quantum of damages against Waypoint. They were not using damages against the subcontract. Against the designers. Yes, Your Honor, that's true. Designers. That's in question 10. It specifically says unapproved change orders. The jury fielded zero. Then it says contractual interest. The jury fielded zero. Then it says total. The jury said zero. We might have an inconsistent verdict if they had put numbers in. Agree? I would agree with that. Okay. On the jury instructions themselves, there are two instructions that talk about assigning fault even against a non-party. Would it have been appropriate under a theory of breach of contract that solely applies to Waypoint to have included them into a comparative 100% total fault chart that deals with other damages against these other defendants? If this suit had only been against Waypoint, there would have been no need for such a chart. So the answer would have to be no, although clearly if there are damages in a construction project, other parties could be responsible. I would point the court in this very case to the fact that the Department of Safety premise was on this comparative fault chart, but there's no way that they could be required to pay money. And what is the significance? This came up before trial, and I don't see where it's ever resolved. It's in your screen on the outside's brief on appeal, and you don't respond to it. Lasky is there, who is an employee, is he not, of Waypoint. He's assigned 5%. There was some dispute about whether Waypoint would be liable for whatever fault Lasky had. That's correct, Your Honor. Say again? Yes, sir, that's correct. I thought that was supposed to be resolved, but it seems to me it was never resolved. It was. I don't see that as a central concern, but just trying to make sure I have an understanding of what this verdict form is all about. What do you see Lasky being on there? Great question. We fought Lasky being on there. Lasky was not an employee, he never was. He was the contracted project manager that handled the project for Waypoint, but he was unemployed. Yes, Your Honor, we fought on Lasky. It was disputed by the other side that he would be responsible for Lasky, and it wasn't resolved before the verdict form. Absolutely correct. Okay, all right. All right, if we look at the verdict form again, I've already pointed out clearly, decisively, the jury says in response to number 6, has it been shown by a proponent to the evidence that Waypoint breached the contract? The answer is no. And then in number 10, I've already reviewed that enough. But I'll point out finally with the comparative fault, 90% went to... Well, let me ask you about this form in categories of special verdict and general verdict. As to Waypoint itself, what was this verdict form? Was it special or general? This was a 49B general with special interrogatories. As to Waypoint, how about as to the other defendants? Would you say the same thing? I wouldn't say the same thing necessarily because I haven't studied that, Your Honor, but I have studied Waypoint, and that number 6 says yes or no. I believe, just from memory, that the earlier part of the jury verdict form did ask liability questions. And if it did and decided decisively as to those parties, then yes, it would be a 49B form. And under our case law, insofar as the need for objection at the time, the jury is still in panel and all that. Is that the distinction between special verdicts and general verdicts as to whether a failure to object at the time weighs the issue of inconsistency? Well, I think you have to look at the form itself. That's certainly something that happens as a distinction. But I think you have to look at the form itself. For instance, some of the cases cited by team do not have a decisive decision on yes or no. In fact, the Mercer case, for instance, specifically says there was no general verdict. They're all special. So I think you have to look at the form itself. Are you saying that it is significant that we classify this as a 49A or a 49B2 or a 49B3, or it's not? I'm saying it is significant that you classify it as a 49B jury verdict form because, if so, the jurisprudence tells us from all the circuits, that an objection should have been made before the jury was dismissed and the reason given, which is what Judge Southwick just said, missed in passing. And that is, you can call the jury back in and get a solution. Is there any significance to the fact that the district court called it a special verdict, or you just think that was a misnomer? I think it was a misnomer, Your Honor. I think that in that order that the court issued, it didn't give the rationale. It simply said, this is a special verdict. It didn't really say why. Well, Judge Morgan does say, and with respect, you know this case better than I do, that I would characterize the parole order in the footnote where she cites different cases and says the Fifth Circuit doesn't quite know what it's talking about, which is probably true, in trying to categorize these different things. And she has a lengthy explanation from a district court unpublished case, I think, that talks about our variations. So I do think that Judge Morgan looked at this and decided this was a special verdict. I don't think it was just a mis-throwaway line, misclassified. She did wrestle with this. Well, I apologize to the trial court. I don't think the case law is entirely consistent. You certainly have some cases in your favor. What do you think is the strongest case to say that if this is a general verdict, it's too late for King to argue that there was any... The Stancil case, Your Honor, which is from this court. The Stancil case specifically said, had an objection been raised as to the consistency of the answers at that time, meaning before the jury was dismissed, the district court could have elected to return the jury for further consideration of its answers and verdict, citing 49B. Having failed to raise this objection at trial, Mrs. Stancil cannot now assert on appeal, where the only option is a new trial. Off the cuff, I would say that's the strongest one, Your Honor, although it also mentioned the Alvarez case, also from the Fifth Circuit, which said the reviewing court is required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies. I believe the Stancil case in answer to your question. Let's make sure I understand the procedural events. When was there an issue first raised about inconsistency between the answers to interrogatories about Waypoint and the finding of no breach of contract? When the jury was dismissed? When? The jury dismissed it... Oh, later, months later. On a certain day? Is it months later, weeks later, an hour later? From memory, it was weeks later. I could be correct. It's at least days. Your Honor, I have three minutes and 31 seconds left. May I go to the next topic? One last question on this one. Could you just explain factually how there could have been 10% negligence attributed to both Lasky and your client? If the trial evidence suggested the entire relationship was a contractual one, and it was disagreement over late payments and payment amounts, where could there have been negligence? No negligence. None at all. And yet the jury found 10%. No, Your Honor. If you'll read carefully, that particular interrogatory, it says responsibility. Not negligence, not liability. It says responsibility, and that's exactly the point. Under the contract, specifically at section 8.5.1, that's ROA 15075, and at section 7.3.7, ROA 15072, and based on the testimony of Lasky, which is ROA 1836 and 7, 1841 and 2, 1868 and 9, and 1958, Lasky explained the entire thing. Under the contract, the owner has the ability to accelerate the contractor if the contractor is behind in time, and that's exactly what happened. And the owner does so without any liability to pay. So it could well be that Waypoint was responsible for the increased cost but has no liability for it. Okay. Thank you. If I may, I'd like to go to the attorney's fees issue, substantially prevail. The court has read the provision. This is a rather unique provision because it says substantially prevail rather than just prevail. And the point is there is no mathematical way to give TEAM the substantial prevail answer it needs to prevail in this case. It sought $5,238,000 in the litigation, which is exactly what's referred to in the clause. Lost profit of nearly $3.8 million, design-related claim over $1.3 million, and a contract claim of $113,000 for a total of $5,238,000. It recovered against Waypoint alone in the second trial, nothing in the first trial. In the second trial, $103,000. If you make that equation of what was sought versus what was received, it's 2.17%. There is no way mathematically that that is substantially prevailing, and there's no case that would make any other rule apply to that. In closing, this is that unique case of tort and contract, and that's what required a special solution, which this court came up with, which all parties participated in, agreed with, no objection made, given, and not until this is all over did TEAM change its mind and say, well, you know, that verdict form just isn't right. Even though exactly what the judge said, if this happens X, if that happens Y, that happened. It was too late. The form was not irreconcilably inconsistent. In fact, the form with answers 6 and 10 was completely consistent within itself. We request that this court reverse the new trial order, find the jury verdict form did reconcile itself, reinstate the first judgment, and reverse the attorney's fees finding, and make it in favor of Wake Point. Thank you, Your Honors. All right, Counselor. Thank you. You say five minutes, four minutes? Four minutes, Your Honor. Lou Zotto? Yes, sir. We'll hear from Mr. McCormick. Good morning. Good morning, Your Honor. May it please the court, my name is John McCormick for the record. I represent the plaintiff appellee, in this case TEAM contractors, referred to them as TEAM. There's an important point to keep in mind in evaluating these claims and these issues, is that every single dollar alleged by TEAM in this case as damages, and every single dollar that was recovered or awarded to TEAM was a dollar that was owed to TEAM under the contract with Wake Point. As far as the substantially prevailing party, TEAM recovered or was awarded $1.5 million as a result of filing this lawsuit. TEAM, over the two trials taken together, prevailed on all but one of 11 separately asserted claims that were presented to the jury. Those are the two issues that are at the heart of this case and are the crux of this appeal. Who is the substantially prevailing party and whether any or all of these damages were owed under the contract, the answer is they all were. Let me ask you about this. The contract is solely between TEAM and Wake Point. Yes. The other defendants were not parties, so whatever attorney's fees were awarded, those other parties would not be responsible for them. Is that correct? That's correct. Yes, Your Honor. You are saying even if the damages were against only ACA and KLG and we uphold the argument by your friend on the other side that there was no inconsistency, does that mean they're still liable for the attorney's fees even though there's no liability under the contract assigned to them? The wording of the fee-shifting provision in the contract is extremely broad. It does not limit the claims to only claims existing between TEAM and Wake Point, but 15.3.2 of the contract reads that in the event of any litigation arising under the agreement, should one party substantially prevail, the non-prevailing party shall pay the prevailing party's costs and expenses. Now, ACA and KLG were the design team who were contracted by Wake Point to come up with the construction documents that were provided by Wake Point to TEAM to construct the project. The damages that TEAM incurred for extra work and extra expenses directed by Wake Point, whether those damages, those extra costs arose from the defective work of their design people or some fault of their own, it was all contract money. It was all money that was owed to TEAM to build the project. And for that reason, the broad language of the fee-shifting provision absolutely should confer on TEAM the right to recover its legal fees and expenses. Could you step back just before we get to attorney fees and use up your time? In his argument, it was quite emphatic that your argument for a new trial was too late, that everyone had agreed to this form. And just sort of housekeeping, there was heavy reference to the record. I thought I'd looked at that record. Is that record from day nine before the form was submitted to the jury, or is the record that's being quoted actually the June 2018 hearing after? No, the citation from Wake Point, from the judge, discussing the possibility of a negligence finding against Wake Point in a comparative fault allotment was before the jury was accused. It was before the, I believe it was after the closing of evidence. Okay, maybe I'm not being clear. I'll just look it up again. I thought I had the citations to that. I thought it was Judge Morgan pulling out her own private notes and then both parties being asked what about it? And you said, boy, I remember there was a lot of talk, but I don't remember specifically. And they said, no, your honor, that's what perfectly answers the debate. But everyone is talking about the fact that there was no on the record discussion of how this form was made. Is that right or wrong? That is correct. That is correct. I guess I'll just say it's sort of an admonition, but it's maybe to myself. It's extraordinary to me how many errors alleged as to instructional or verdict form come to us because the parties and the district court decide to go off the record. And then everybody's trying to reconstruct it with memory. And that is where we are. Isn't that correct? That is correct. As far as the negotiation and the actual discussions leading to the form itself, that is correct. I thought the Court Reporters Act required made mandatory, not permissive. I guess it wasn't in the open court. Is that what happened? Everyone agreed to go back in chambers? The majority of the discussions that led were status conferences in chambers that were not on the record. Okay, but if we accept her notes that were read, it does look like you were told exactly what might happen did happen. Do you disagree with that? I do not disagree, but what's important is that the judge specifically said if there is a finding of negligence aside from breach of contract against Waypoint, then this could happen. That's not what happened. There's no evidence or testimony in the record. There's no record evidence of any kind, of any allegation at any point, that Waypoint may have committed some negligent act or omission. Is that really right? I mean, opposing counsel just said you had a negligence of some size. No negligence came against them right up until the eve of trial. And then he pointed out that there was evidence that maybe Lasky didn't supervise this well, so there could have been noncontractual responsibility. That verdict could make sense. In fact, I'm glad you brought up Lasky. There was never any dispute at trial that vis-a-vis team, Steve Lasky acted at all times as the duly designated agent representative for Waypoint. Now, Waypoint might have an indemnity claim somewhere against Steve Lasky. That's none of my business. But as far as this trial is concerned, as far as Waypoint's relationship with team, there was a continuity and a complete free line for Steve Lasky. That was never disputed in trial. Counsel called in as Waypoint's possible 5% negligence, and my question earlier to Mr. Shields, where was it going to be resolved whether Waypoint was responsible for Lasky? Was that an issue at trial and whether Lasky was acting in some way for which Waypoint was not responsible or conversely was responsible? It was not. In fact, in direct testimony from both Steve Lasky and Waypoint's representative, Chris Robertson, who deferred entirely to Steve Lasky about anything that went on in the project, there was no dispute. In fact, there was direct acknowledgment that Steve Lasky was acting as an agent representative at all times on behalf of Waypoint. Did you think there was evidence that Lasky was potentially negligent in what he was doing out there? Not outside of his agency? It's possible that he was acting in some way negligent, that Waypoint, because they supervised him, also was somewhat negligent, and the issue of whether Waypoint was going to be responsible for Lasky would be decided later. Isn't that where potentially a 10% allocation of fault could be? Aren't you going back on what you just said, that Lasky potentially was not properly doing whatever he was supposed to be doing out there and Waypoint was responsible for it? If Lasky was not properly doing what he was doing out there, then it was a breach of contract. There's no possibility of a negligent act or omission by Lasky or Waypoint falling outside of the confines of the contract. There's no evidence of that. And Waypoint hasn't come up with any examples. It could be that. The jury room is a black box. I guess I have two quick legal questions. Even if there isn't a waiver by you when the form was constructed and it was discussed over and over again, don't you still, if we do place this under a 49B general verdict, didn't you still have the obligation to object when they could have been resubmitted to the jury? That's legal question number one. And then just so you make a note of it, the second question is the district court giving you a new trial only cites the Dawson case, to my memory. Would you agree that that case is pretty distinguishable? That was one claim inconsistency within one as distinct from two. Those are my two legal questions. Okay. First, to address the 49A or B question, I find it interesting that counsel cited Stancil and Alvarez as the two most prominent cases on point in the Fifth Circuit making this distinction. Stancil, if you look at the actual form that was submitted, it's part of the case. It's in the case. The Stancil form actually says special verdict form. In passing, Stancil refers to it as a general form, but it's treated in the case, other than that passing reference, as a special verdict form. In Alvarez, Alvarez actually has very similar yes, no liability questions to the verdict form we use. Alvarez was considered entirely under 49A as a special verdict form. It was called a general charge with special interrogatories, but the Fifth Circuit in Alvarez emphatically rejected the argument that under those yes, no liability questions that the appellant had any obligation to object prior to the dismissal of the jury. Well, just pragmatically, though, why isn't it the requirement of a party when the form is being discussed to say, uh-oh, this could have a problem? Or if it's not an obligation then, certainly when the jury renders its verdict and we can still get it back to them. Just pragmatically, why? You're just saying you missed it each time? Pragmatically, Your Honor, and I'm not going to get into off-the-record conversations except to say that the verdict form that is on the record was the product of literally months of off-the-record status conference discussions and arguments. Okay. As far as the objection before the jury went out, Your Honor, there's a period of about two minutes where the jury comes in, they give their verdict, and they're gone. Yeah. Afterwards, we looked at a 12, 11 or 12 question verdict form. We started looking at the different issues, and it occurred to us after the jury was gone that this was a— That's a fair answer, and I don't want to take all your time. What are your thoughts on Dawson? Because that was the only authority relied on, and I didn't see that as controlling this case. I do think that Dawson is applicable. Dawson deals with a similar issue where there is a finding of fault. Well, I actually think Dawson is the opposite, and so I think it's even more instructive because what you have in Dawson is you have a finding of fault but without an ultimate causation determination, whereas in this case, you sort of have it backwards where you have a finding that—or maybe it's the other way around, I suppose—that Waypoint was 10 percent responsible for damages but not liable under a breach of contract theory. I think Dawson is similar in the sense that you have an ultimate determination of no causation when you also have a parallel finding of contributory negligence. I can pull the case up to look more specifically at it. Thank you. Before you leave that, even though Mr. Shields mentioned two other cases, let me just ask you about the law. Regardless of what we ultimately decide, where we ultimately decide this verdict form fits, do you accept that the law in the Fifth Circuit is that if it's a general verdict with interrogatories, that that's the right category, which means there is an overall verdict to fall back on if there are inconsistencies that were not raised before the jury was discharged. Objection has to be made in that two minutes. No. Okay, that's the real question. Why is it? I mean, there are cases that say that. I think one that Mr. Shields mentioned, I would say Montano, which is much more recent by Judge Barksdale. He makes that precise distinction in the opinion. Under general verdict forms, you have to make the objection, but this was a special verdict, so the need for an objection does not apply. That law is seemingly there. Are you just saying it's too varied and there's no firm rule, or how do you come out? My response is this. I do not believe that that jurisprudential rule should operate as an absolute bar to a new trial or inconsistent jury verdicts when we have case law also that says that under no circumstances, even considering the Seventh Amendment and the judge's duty to reconcile the verdict whenever possible, that if the responses are indeed inconsistent and are not subject to some reasonable, logical explanation, the new trial must be granted. Now, that is a substantive holding that, in my opinion, overrules the more procedural aspect of the objection. And I think that Standstill addresses this, actually. What's interesting about Standstill is that even though later on, as an afterthought, the Standstill court said, oh, by the way, you didn't object, so you couldn't have brought the — you shouldn't have had the new trial anyway, the first inquiry they make is whether that verdict was inconsistent. That's the first thing they looked at, and that's the first, most important thing they considered, and they found that it was not. And only after they did that did they go and look at the more procedural 49B rule to say, oh, by the way, you didn't object either. And because you didn't object, the trial court did not abuse its discretion in denying the new trial. But I do believe that the substantive issue of whether the inconsistent verdict can stand or not must come before the procedural element of waiver. That's a fair answer. We'll see if that fits with the case law that faces you, but that's a good effort. Let me ask you about two jury instructions that I think relate to how the jury acted. One is number 34, and this is from the first trial, comparative fault. It says, under Louisiana law, you must assign the fault of all persons whose costs are contributed regardless of whether those individuals are companies or dependents in this case. Then instruction 27 talks about general negligence. The team has asserted negligence against both HCA and KLG. It doesn't mention white corn anywhere in there. You must assign responsibility, must total 100 cents, and the rest of that. It seems to me with those instructions, and assuming, which is a stretch, but that is part of the legal analysis, assuming the jury followed their instructions, it seems to me that when they looked at comparative fault, they had to think more broadly than negligence. And I'm not sure what they were thinking about waypoint and Lasky. But nonetheless, they did put a very low percentage for them, which I could see coming from this comparative fault instruction, but they scrupulously otherwise followed waypoints, get out of jail free instruction, which says whether they were negligent or whether they breached the contract or not is the sole basis of liability. So you talked about spending months on the jury instructions. The jury didn't have that much time, and they were there with this month's worth of work that is a compromise of sorts of a difficult situation, and they're doing the best they can in a difficult situation. And as far as whether there's any inconsistency or not, there are certainly ways to say the jury did the best they can, and they clearly said no breach of contract. And so there's no inconsistency. In fact, particularly when the parties themselves and Judge Morgan, that's an odd way to put it, Judge Morgan herself has recognized this possibility before the jury ever went out. So I'm not saying where I am on this, but help me with this. Why aren't we giving this sort of set of instructions in very form to the jury? It seems to me they got pretty close to saying there's no breach of contract. That legally means no, which is the judge's decision, no liability on the part of waypoint. Well, Your Honor, I think that we've covered the negligence issue fairly conclusively, so I think that in answer to your question, it might be instructive to address waypoint's other. I do agree with Mr. Shields, and I think you would too, that looking at the comparative fault instruction, which is what I then think, or filling out the total 100%, it's not talking about negligence. No, I don't think it is. And so it's any kind of fault. Now, I must say, it's not some sort of fault, but we know it's not contractual fault. So whatever the make of that, the problem of the interrogator is that you have a general verdict. The problem, Your Honor, is that there is, unlike the other cases that we've looked at, Alvarez, Standstill, which I believe are both Jones' acts on Seedworth and his cases, even Dawson, there are, in those cases, there are separate theories of liability that are presented to the jury and explained extensively to the jury with different standards of liability. That was not the case with waypoint. There was no, there are no instructions to the jury that could have led them to the reasonable conclusion that waypoint was responsible for team's damages without breaching the contract. And this gets me to the second theory that waypoint has put out there, which is that, first of all, it seems they acknowledge some negligent fault on their own behalf. I don't necessarily disagree with that, but it would also fall under breach of contract. But the second theory that they put out there is that there was some authority given to them within the contract that allowed them to order extra work by team without having to pay team for it. That also falls short because of the pace of the verdict form. There are only two ways under the contract that that could happen. One is that team was forced to do extra work because of some delay or project disruption that was the fault of team or its subcontractors. And that possibility is directly addressed in the comparative fault analysis. It's question nine on the original verdict form. The jury said zero, zero fault to team or any of its subcontractors in causing its own damages. The only other way that waypoint might be allowed to order team to do extra work without paying them is if they were able to take advantage of some one or more contractual defenses that they did assert at trial. The verdict form also specifically addresses that. When we get to the first verdict form, question 11, we go from question 10 to question 11. The jury is asked if the total amount you entered is zero for the separate contractual damages and you assigned more than zero percent responsibility to waypoint, not that you assigned breach of contract, but did you assign more than zero percent responsibility, then proceed to question 11, did waypoint have any contractual defenses? The answer is no. So both of the possibilities of waypoint ordering team to perform work or some other way of inducing them to perform work and not paying them for it under the contract, those are both addressed. And if that's the theory, if that's it, those two theories, that still leaves this verdict form irreconcilably inconsistent. Let me ask you about the last question in the form. You're familiar with the case. Any significance meaning to the number 46 written in there? I have no idea what that is. Is that from the jury? As far as we know, this is the jury stealing out of this? I believe so. I remember talking about that, and I don't have any idea who wrote that. 46 had something relevant there. Anyway, how come the case will not turn on? You can proceed. Your Honor, I do want to revisit very briefly the 49A or B dispute or issue. The cases are all in alignment. One of the primary reasons that the judge is given such broad discretion in granting or denying a motion for a new trial is that the judge is in the best position to view the case as a whole in light of the evidence and testimony that's presented. That's another thing we haven't talked about. All of these cases specifically address the evidence, the allegations that were actually presented at trial. That is directly relevant because none of the theories, and there are really only two possible hypothetical theories that White Waypoint has come up with to try and reconcile the current form, neither one of those theories is consistent or possible under the evidence and testimony that was submitted at trial. The trial judge, especially in this case, sitting in this case for over five years through two jury trials, no one is in a better position to decide whether or not this trial needed to be retried. I will tell you, and the record will show this just from a number of briefings, this trial judge made every attempt possible to avoid a second trial, to reconcile the verdict form, and certainly to avoid us coming here before this court. I find it odd that she did not address the point that Mr. Shield is raising, that was talked about a good bit before, that Judge Morgan seemed to realize might happen, that pre-jury statement about you might have this difference. What's your response to that? Why isn't what happened what she was predicting could happen? And why did she not even address that in her opinion, in her order? Your Honor, I apologize, but I can't really attempt to get into the district court's method. Isn't it though what she was predicting could happen? Why isn't it what she predicted would happen? It could be she was wrong, she isn't irreconcilable, all that kind of stuff. I'm not saying otherwise. But isn't what happened what she was predicting could happen? What I think she was predicting, and again, I can't get into the trial court's head, but what I believe she was predicting is that if in the event that there was some evidence or some testimony or some suggestion that Waypoint or Lasky may have done something that could be considered a negligent act outside of the four corners of the contract of the team, then this is the situation we may have. As it turns out, that testimony evidence was never presented, that allegation was never made, there was never a suggestion that Waypoint or Lasky could have done anything that may have made them responsible for team damages that would not have been a breach of contract. All right, counsel. Thank you. That's good. Okay. You've answered my question. Thank you, Your Honor. Mr. Shields? I do want to address this. In your time up, is that four minutes for Mr. Shields or is that? I'm sorry? His time is up. His time is up. Thank you, Your Honor. You got it. Mr. Shields, you can proceed. Sorry, Your Honor. I had to unmute myself. I forgot that I had done that. That's all right. If you're waiting for me or while you're doing that, we'll be clear. No, sir. May it please the Court. Just a clarification. While it's true that there were months of discussion about that jury verdict form, the judge did put fully on the record the results of that, and that's contained in ROA 672 through 77. And having said that, we would pray for judgment in favor of waypoint arrest. Thank you, Your Honor. Well, thank you. We appreciate any time back. That closes the video arguments of the day. Sorry we didn't have the opportunity to see each of you a little bit more in person, but we'll see how long this approach lasts. Thank you, Your Honor. We are in recess.